IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
RYAN WILLIAMS,                    :
                                  :
      Plaintiff,                  :
                                  :
vs.                               :
                                  :   CIVIL ACTION 15-0496-M
CAROLYN W. COLVIN,                :
Social Security Commissioner,     :
                                  :
      Defendant.                  :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff
seeks judicial review of an adverse social security ruling
denying a claim for Supplemental Security Income (hereinafter
*SSI*) (Docs. 1, 11). The parties filed written consent and this
action has been referred to the undersigned Magistrate Judge to
conduct all proceedings and order judgment in accordance with 28
U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b)
(*see* Doc. 19). Oral argument was waived in this action (Doc.
17). After considering the administrative record and the
memoranda of the parties, it is **ORDERED** that the decision of the
Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and
Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative decision, Williams was thirty-nine years old, had completed an eleventh-grade special education curriculum (Tr. 329, 337-38), and had previous work experience as an auto body repairer helper, construction site helper, and commercial laundry sorter (Tr. 34).  Plaintiff alleges disability due to anxiety, high blood pressure, obesity, degenerative joint disease in the bilateral ankles secondary to rheumatoid arthritis, and borderline intellectual functioning (Doc. 11 Fact Sheet).

The Plaintiff applied for SSI on February 25, 2011, alleging an onset date of June 30, 2010 (Tr. 111-16, 279).[1]  An Administrative Law Judge (ALJ) denied benefits, determining that although he could not perform his past relevant work, Williams was capable of performing specific sedentary jobs (Tr. 357-65);

---

[1]The record demonstrates that Plaintiff also applied for disability insurance benefits at the same time (Tr. 103-10).  Williams apparently is no longer seeking those benefits, though the Court can find no explanation therefor in the record.

the Appeals Council denied Plaintiff's request for review (Tr. 370-75).

An action was filed in this Court and, Magistrate Judge Cassady, on an unopposed Motion to Reverse and Remand filed by Defendant, recommended that the case be remanded to the Social Security Administration for further consideration (Tr. 378-80). Specifically, the ALJ, on remand, was directed to do the following:

> afford Plaintiff the opportunity for a new hearing and issue a new decision; considering the entirety of all medical opinions in the record, perform a complete analysis of whether any of Plaintiff's impairments meet or equal any of the Listings at step three of the sequential evaluation process; identify and explain what weight is given to all the medical opinions in the record; and obtain appropriate medical expert and/or consultative examiner evidence with further IQ scoring, as necessary.

(Tr. 378).  District Court Judge Granade adopted the Report and Recommendation as the opinion of the Court and entered Judgment (Tr. 376-77).

On remand, following a hearing, the ALJ again found that Williams was not disabled as he was capable of performing specific sedentary jobs (Tr. 279-94).  Plaintiff requested review of the hearing decision (Tr. 274-75), but the Appeals Council denied it (Tr. 265-72).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Williams alleges that:  (1) Plaintiff meets the requirements of Listing 12.05C; and (2) the ALJ did not properly consider the opinions and conclusions of three different Examiners (Doc. 11). Defendant has responded to—and denies—these claims (Doc. 14). The Court's review of the relevant evidence of record follows.[2]

On January 19, 2011, following complaints of foot pain, Plaintiff underwent x-rays at the Franklin Primary Health Care (hereinafter *Franklin PHC*), revealing mild midfoot osteoarthritic changes bilaterally; standing five foot, nine inches, he weighed three hundred, five pounds (Tr. 192-93, 227). Tramadol[3] was prescribed.

On April 23, Dr. Otis Harrison, Internist, who had been treating Williams for three months, completed a pain form indicating that he had osteoarthritis in both feet that caused intractable and virtually incapacitating pain (Tr. 194-95, 228-31).  Physical activity would increase Plaintiff's pain to such an extent that he would require bed rest; his pain would keep him from working.  Williams was restricted from walking and

---

[2]The Court will only review that evidence relevant to the claims brought in this action.

[3]*Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

standing.

On May 4, 2011, Psychologist Donald E. Hinton, without the benefit of examining Williams, performed an evaluation of the evidence of record as of that date, and determined that Plaintiff suffered from significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before he was twenty-two years old (Tr. 201; *see generally* Tr. 197-210).  Hinton indicated that Williams had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace (Tr. 207).  On the same date, Hinton completed a mental residual functional capacity assessment in which he indicated that Plaintiff was moderately limited in the following:  his ability to understand, remember, and carry out detailed instructions; his ability to maintain attention and concentration for extended periods; and his ability to set realistic goals or make plans independently of others (Tr. 211-14).

Three Franklin PHC examinations and a round of Hydrocodone[4] later, on May 19, Williams complained of ankle pain, bilaterally, that he rated as ten on a ten-point scale; the

---

[4]**Error! Main Document Only.***Hydrocodone* is used "for the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

diagnosis was rheumatoid arthritis for which Lortab[5] was prescribed (Tr. 188-91, 225-26).  Two examinations later, on August 23, 2011 Dr. James Lawrence noted that Plaintiff was limping, favoring the left although x-rays demonstrated worse changes on the right; the Doctor went on to say that this "[was] a very confusing case" and that he would request lab work (Tr. 222).  The pain still existed on November 3 for which he was given steroids.

On November 23, Dr. Lawrence noted limping on the left with 1-2+ swelling with warmth in the left ankle and stated that Plaintiff had a positive rheumatoid factor; the Doctor was going to try various medications as treatment (Tr. 232-33).

On January 4, 2012, a Doctor from Franklin prescribed Lortab and Xanax[6] (Tr. 237-38).  On April 9, Williams complained of a headache; no new therapy was prescribed (Tr. 235-36).

On March 14, 2012, Dr. Lawrence noted 1+ swelling and warmth in Plaintiff's left ankle and a trace on the right, but nothing in the knees or hands; he increased his steroid and

---

[5]**Error! Main Document Only.**_Lortab_ is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." _Physician's Desk Reference_ 2926-27 (52nd ed. 1998).

[6]**Error! Main Document Only.**_Xanax_ is a class four narcotic used for the management of anxiety disorders.  _Physician's Desk Reference_ 2294 (52nd ed. 1998).

prescribed Cyclobenzaprine[7] (Tr. 241).  X-rays of the lumbar
spine and left ankle revealed no abnormalities (Tr. 256).  On
June 13, Dr. Lawrence noted, essentially, no symptoms, but
stated that this was an "extraordinarily atypical" case (Tr.
239).

On June 18, 2014, Williams was examined at the Mobile
Diagnostic Center by Dr. Yanming Xing for rheumatoid arthritis
in both feet and ankles (Tr. 514-29).  On examination, the
Doctor noted full muscle strength in all extremities both
proximally and distally; mild tenderness was noted in the left
ankle and midfoot.  X-rays revealed no abnormalities in the feet
or hands, bilaterally (Tr. 529).

On July 22, Dr. Lawrence completed a Physical Capacities
Evaluation (hereinafter *PCE*) in which he indicated that
Plaintiff was capable of sitting four and standing/walking for
less than one hour at a time and during an eight-hour day (Tr.
480).  Williams was capable of lifting and carrying up to five
pounds frequently and ten pounds occasionally, but never more
than that; he was not able to use foot controls.  Plaintiff
could frequently reach, occasionally bend, crawl, and climb, but
could never squat; he was mildly restricted in being exposed to
marked changes in temperature and humidity and in driving

---

[7]*Cyclobenzaprine* is a muscle relaxant used to treat skeletal
muscle conditions such as pain or injury.  *See*
http://www.drugs.com/cyclobenzaprine.html

automobile equipment, but was moderately limited in working at unprotected heights, being around moving machinery, and being exposed to dust, fumes, and gases.  On that same date, Dr. Lawrence completed a form indicating that Williams's pain would frequently distract him from adequate performance of work activities and that medication side effects would be expected to be severe and limit his effectiveness (Tr. 481).

On July 31, 2014, Dr. Lawrence reviewed x-rays indicating no abnormalities in Plaintiff's lumbar spine or either ankle (Tr. 504).  On August 29, Plaintiff complained of feeling down, depressed, and hopeless with pain at a level ten (Tr. 500-503).  The Doctor noted an antalgic gait, that Williams was bent forward, and that he used a cane; he further noted limited active ROM.  Lawrence recommended an exercise program, weight reduction, a low sodium diet, smoking cessation, and decreased alcohol intake.

On September 9, Dr. Eyston A. Hunte examined Williams for complaints of back and joint pain as well as difficulty walking (Tr. 491-93).  On examination, the Doctor noted no sensory or motor deficits and that strength in all extremities was normal; Plaintiff had full ROM throughout with mild crepitus in the knees and puffiness in the left ankle with mild tenderness to palpation.  Gait was normal with a slight limp in both feet with self-prescribed cane; toe, heel, and tandem walk were normal.

8

Plaintiff had minimal tenderness over the lower lumbar area.
Williams stated that he was able to do his daily activities.
Dr. Hunte completed a form in which he indicated that Plaintiff
could lift and carry up to one hundred pounds occasionally and
ten pounds frequently (Tr. 494-99).  Williams could sit for
four, stand one, and walk one hour at a time and could sit six,
stand one, and walk one hour during an eight-hour day; the
Doctor indicated that Plaintiff would need one hour of bed rest
daily.  Hunte stated that he needed a cane to walk, but that he
could use his free hand to carry small objects.  Williams was
able to reach, handle, finger, feel, and push/pull frequently
with both hands; he could use foot controls, climb stairs and
ramps, climb ladders or scaffolds, balance, stoop, kneel,
crouch, and crawl only occasionally.  The Doctor indicated that
Plaintiff could walk a block at a reasonable pace on rough or
uneven surfaces, climb a few steps at a reasonable pace with the
use of a single hand rail, prepare a simple meal and feed
himself, and care for his own personal hygiene.

On September 10, 2014, Psychologist John Davis, at the
request of the Social Security Administration, performed a
consultative examination of Williams who told him that he has
Rheumatoid Arthritis that causes pain in his ankles, feet, and
toes; medication eases the pain, but causes drowsiness and an
inability to focus (Tr. 482-90).  Plaintiff had not taken the

9

medications in several weeks.  The Psychologist found Williams
oriented to person, place, and time and demonstrated no
indications of deficits in his overall concentration or
attention; Plaintiff had no loose associations, tangential or
circumstantial thinking.  There was no confusion; overall
thought processes were simple and limited.  Judgment and insight
were considered fair.  Davis administered the WAIS-IV on which
Williams scored a verbal comprehension of 74, perceptual
reasoning of 69, working memory of 77, processing speed of 86,
and a full scale score of 71; the Psychologist's diagnostic
impression was borderline intellectual functioning with a
guarded prognosis.  Davis thought Plaintiff was mildly impaired
in his ability to understand, remember, and carry out simple
instructions and make judgments on simple work-related
decisions.  He was moderately limited in his ability to
understand, remember, and carry out complex instructions and
make judgments on complex work-related decisions; Williams was
also moderately impaired in his ability to interact
appropriately with the public, supervisors, and co-workers, and
to respond appropriately to usual work situation and to changes
in routine settings.  The Psychologist did not think that
Plaintiff would be able to manage any forthcoming benefits
because of a history of drug abuse; he also stated that
Williams's mental capacity was "an add-on factor but in and of

itself [was] not disabling.  Decision about his disability need to be based on the general medical condition of this claimant" (Tr. 487).

On September 23, 2014, Dr. Lawrence examined Williams for pain and anxiety; the examination was, essentially, normal (Tr. 535-37).  On December 19, 2014, the Doctor summarized his treatment of Williams's Rheumatoid Arthritis, noting that the medications had cleared up the synovitis and although Plaintiff still experienced pain, x-rays could not explain why (Tr. 538-41).  Lawrence thought that the pain, rated as ten, by Williams, was neuropathic.

This concludes the Court's summary of the evidence.

Plaintiff claims that he meets the requirements for Listing 12.05C.  The introductory notes to Section 12.05 state that "[i]ntellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2015).

11

In her determination, the ALJ found that Williams did not meet the requirements of any Listing (Tr. 283-87).  More specific to this claim, though, the ALJ stated that "[w]hile the claimant does have some IQ scores that fall between 60 and 70 and he has other severe impairments imposing additional functional limitations, the requirements of 12.05C are not met, as his adaptive functioning is not consistent with an intellectual disability or mental retardation" (Tr. 286).

Williams challenges this finding, noting that the ALJ acknowledged that he had met the Listing requirements regarding IQ scores and the additional impairment imposing significant limitation of function (Doc. 11, pp. 3-10).  Plaintiff argues that he has also met his burden of proving he suffered adaptive deficits before turning twenty-two and has, therefore, met all of the requirements of Listing 12.05C.

The Court notes that although the regulations require that Plaintiff demonstrate he suffered "deficits in adaptive behavior" before he turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that mental retardation is a condition that remains constant throughout life."  The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits

12

in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." *Hodges*, 276 F.3d at 1266.  However, the presumption is rebuttable.  *Hodges*, 276 F.3d at 1267.

In determining that Williams had not satisfied the "adaptive deficits" requirement of Listing 12.05C, the ALJ pointed to his ability to do simple arithmetic, obtain a driver's license, perform his own shopping, prepare meals, and do household chores (Tr. 286).  Plaintiff had also worked for several years at two different unskilled jobs and had quit because of his physical impairments—not because of intellectual disability.  The ALJ pointed out that Williams had been awarded custody of his two teenage sons and that, at the evidentiary hearing, he had testified of goals for his children and his punishment of them when needed.  The ALJ also pointed to Psychologist Davis's diagnosis of borderline intellectual functioning, as opposed to intellectual disability, and specific finding that his mental capacity was an "add-on factor" and was not disabling in and of itself.  The ALJ credited the opinions of both Davis and Psychologist Hinton as support for his conclusion that Williams had not satisfied all of the requirements of Listing 12.05C.

The Court finds that the ALJ has rebutted the presumption that Williams suffers from deficits of adaptive functioning.

13

While the Court is sympathetic to Plaintiff's argument that his work did not constitute substantial gainful activity (Tr. 11, p. 7), the question here is not what Williams's pay was, but whether he was able to perform the work; the answer to that question is yes. Likewise, though Plaintiff has limitations, they do not arise to the level of non-functioning defined in the Listing requirements. The Court finds substantial evidence to support the ALJ's determination in this matter.

Williams next claims that the ALJ did not properly consider the opinions and conclusions of three different Examiners (Doc. 11, pp. 10-19). The specific arguments relating to each Examiner will be taken up separately, but the Court first notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[8] *see also* 20 C.F.R. § 404.1527 (2015).

Williams first argues that the ALJ improperly rejected limitations found by Psychologist John Davis (Doc. 11, pp. 10-12). Plaintiff specifically refers to the following finding by Davis: "The claimant's ability to interact appropriately with

---

[8]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the public, to interact appropriately with supervisors and co-
workers; and to respond appropriately to usual work situation
and to changes in routine setting is moderately impaired" (Tr.
487).  Williams further notes that the Psychologist found that
he had moderate limitations in his ability to respond
appropriately to usual work situations and changes in routine
settings (Doc. 11, p. 10).

As support for Davis's findings of moderate limitation,
Plaintiff points to the Psychologist's report of Williams's own
statements that he has trouble focusing and has stress over
financial troubles (Doc. 11, p. 12; *cf.* Tr. 482); Davis also
reported Plaintiff's statement that "[h]e used to enjoy
socializing but no longer does" and had no hobbies (Tr. 485).
Williams points to the Psychologist's finding that he had a
"flat mood and expression" (Doc. 11, p. 11; *cf.* Tr. 484).

In her determination, the ALJ gave little weight to Davis's
findings, noting that those conclusions were not supported by
his own examination notes or the record as a whole (Tr. 287).
In doing so, the ALJ first noted that the Psychologist indicated
that Williams had "normal social relationships with his family
and peers" (Tr. 485); Davis also reported that Plaintiff's
"interaction with staff and examiner was satisfactory" (Tr.
483).  The ALJ went on to point to Williams's own statement, in
a form he completed for the Social Security Administration, that

he had no trouble getting along with others; Plaintiff also indicated that he spent time talking on the phone and attending church weekly or bi-weekly (*see* Tr. 144-45).  Finally, the ALJ noted that Williams "has never been fired or laid off from a job because of problems getting along with others and there is no indication in the record that he had any difficulties interacting with others or responding to changes in the work setting while working as a laborer or garment sorter" (Tr. 287). In his arguments, Plaintiff only addresses this last finding, arguing that his work record "does not support the ALJ's conclusion" (Doc. 11, p. 11), but he points to nothing in the record that contradicts it.

Further arguing that the ALJ gave short shrift to Davis's conclusions, Williams objects to the greater weight given to the conclusions of nonexaminer Psychologist Hinton over Davis (Doc. 11, pp. 11-12).  Plaintiff correctly notes that Social Security regulations state that the weight given to a nonexamining physician's opinion will depend on, among other things, the degree it is supported by the other evidence of record.  20 C.F.R. § 416.927(c)(3)-(4).  Furthermore, "'reports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence.'"  *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (*quoting Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)).

The ALJ gave significant weight to the opinions of Dr. Hinton (Tr. 287) who found that Plaintiff had few moderate limitations, none of them in the social interaction sphere (Tr. 211-12).  The only evidence contradicting Hinton are the conclusions of Psychologist Davis, discredited by the ALJ for a number of stated reasons.  The Court finds those reasons are well-supported and amount to substantial evidence.  Though the Court's determination leaves Psychologist Hinton's opinions as the evidence supporting the ALJ's conclusion, this determination would be the same had Hinton never entered a report as absence of evidence is evidence itself.  Williams's claim regarding Psychologist Davis is of no merit.

Plaintiff also claims that the ALJ improperly rejected the opinions of his treating doctor, Rheumatologist Lawrence (Doc. 11, pp. 12-17).  Williams points to the ALJ's rejection of the Doctor's PCE and pain assessments.  The Court notes that a treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary," existing when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(*quoting Lewis v. Callahan*, 125 F.2d 1436, 1440 (11th Cir.

1997)).

In her determination, the ALJ found that Dr. Lawrence's assessment of Plaintiff's pain was not supported "by his treatment records or the record as a whole," giving the opinions therein little weight (Tr. 292).  The ALJ noted that Williams's rheumatoid arthritis improved with treatment; at the most recent examination, there was no synovitis.  The ALJ pointed out that although the Rheumatologist treated Plaintiff in 2011-12, there was a two-year gap during which he did not see him at all; the ALJ further noted that although Williams took medication[9] for the impairment during this period, he received, at most, only minimal treatment for it at all from any source.  The ALJ also discounted Lawrence's opinion that his medications caused disabling side effects, noting that there was no evidence of Plaintiff making this complaint to any medical provider, a finding unchallenged by Williams.

The ALJ also gave little weight to Dr. Lawrence's PCE evaluation in which he found Plaintiff able to work only five-of-eight hours during a workday (Tr. 292).  The ALJ noted that it was inconsistent with the x-ray evidence and minimal examination findings.  Ultimately, the ALJ credited Williams's

---

[9]Williams has pointed out that the ALJ incorrectly found that he had not been prescribed his medication since 2012 (Doc. 11, p. 15; *cf.* Tr. 290, 537).  The Court considers this error harmless, finding that it would not, ultimately, change the administrative decision so there is no need to remand this action on this basis.

medication regimen for the lack of available objective medical evidence in finding that he was able to work.

Plaintiff takes issue with the ALJ's giving less weight to Dr. Lawrence's opinions because the x-rays and lack of synovitis did not support them, arguing that she was relying on the wrong evidence (Doc. 11, pp. 15-16).  Williams asserts that the proper evaluation was to examine the "RA Latex Turbid (turbidity) result of 270.3, significantly above the reference range of 13.9" (Doc. 11, p. 16; *cf.* Tr. 527, 538).[10]

The Court notes that although Plaintiff correctly points to this particular test result, he has declined to discuss the fact that he went without treatment for two years and his condition improved.[11]  The only other evidence in this record that might support Dr. Lawrence's conclusions comes by way of Dr. Harrison whose treatment preceded that of the Rheumatologist.  The ALJ gave little weight to his conclusions as being based on Williams's subjective complaints and because he had only just begun to take the medication that was relieving the impairment symptoms (Tr. 291-92).

The Court finds good cause for rejecting Dr. Lawrence's conclusions that Williams is unable to work as the evidence does

---

[10]The lab page showing the results indicates that the test was done twice and the range of the measure was 0 through 13.9.

[11]Though noted by neither the ALJ nor the Government, it concerns the Court that Dr. Lawrence's pain and PCE assessments were completed without examination following a two-year gap in treatment.

not support them.  The Court finds that the ALJ's rejection of Dr. Lawrence's conclusions is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ improperly rejected the conclusions of Dr. Hunte.  More specifically, Williams asserts that the ALJ improperly interpreted his opinion evidence (Doc. 11, pp. 17-19).

The Court notes that Dr. Hunte completed a physical capacities form indicating that, during an eight-hour workday, Williams could sit for six hours and could stand and walk, each, one hour (Tr. 495).  Directly below those findings is the following question:  "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?"  In the space provided, Hunte wrote "Bed rest 1 hr/day" (Tr. 495).

In her determination, the ALJ gave significant weight to Hunte's conclusions (Tr. 291).  The ALJ went on, however, to find that "[a]lthough Dr. Hunte also opined that the claimant needs one hour of bed rest per day, he did not specifically indicate that this was required during an 8-hour workday" (Tr. 291).

The Court finds no merit in Plaintiff's claim.  Dr. Hunte specifically found Williams capable of working an eight-hour day.  His statement regarding the hour of bed rest is incompatible with the form itself and is not supported by the

balance of the record.

Williams has raised four different specific claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 23rd day of May, 2016.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE